may, and doubtless will in some cases act arbitrarily, influenced by passion, prejudice, or personal considerations. The possibility of such action is present in every case where partizan bias, or personal favor may influence conduct. It may affect a local board of sub-directors, as well as a township board of education, and perhaps in the matter of electing teachers is more apt to do so. If the township board may be influenced by such motives in refusing to confirm, so may the local board in electing. Final power must be vested somewhere, and the law places it in the board of education. The courts cannot inquire into the motives that may actuate either board, unless fraud, corruption, or bad faith is charged. The evils that would result from interference on less serious grounds would be far greater than those which may flow from the larger liberty of action, though such liberty may occasionally result in an election prompted by passion, prejudice, or personal favor. The instances will, I believe, be very rare, where the committee on teachers, or the township board will refuse to confirm the election made by the local board without substantial reasons therefor. If in any case the board should refuse to confirm the first election, the local board has it in its power to again elect another teacher, and a second refusal to confirm can scarcely be expected in any case, consistently with good faith on the part of the board of education. Every provision of the statute may be given effect without denying to the township board the power to finally decide, which seems plainly conferred by the language of sec. 4017. In this case the local board refused to make a second choice. Whether such refusal was prompted by passion, local causes, or personal bias, I cannot know. It is charged that the refusal of the township board to confirm this election, was solely because it desired to elect the teacher and had "favorites of its own" among the teachers. A charge of favoring one teacher above another, even admitting that the one discriminated against is in every way worthy and efficient, is not a charge of either fraud or bad faith. The school may prosper as well under the management of the one as of the other, and no public interest may suffer thereby. By failing to elect "another" teacher, after the township board failed to confirm the first election, the local board placed it in the power of the board of education to elect the teacher after the third Monday of August. That board has done so; and its action is final A question has been raised as to the right of the relator, merely as a tax payer and patron of the school, to maintain this action. But as the demurrer must be sustained on the main question of the construction of the statute, I have not found it necessary to determine the question last suggested.

Demurrer sustained.

Mills, Clevenger & Huls, for relator. W. H. Hartman, and West & Walker, for defendant.

(Clark County, Probate Court.)

WM. S. THOMAS et al. v. THE BOARD OF COUNTY COMMISSIONERS & W. W. WILSON.

*Eminent Domain—*

(1). The lands of an individual can be taken against his will only when it is necessary to subserve a public purpose or a public use. Wet lands not only retard cultivation, but are the certain sources of malaria, the prolific parent of disease. To affect the drainage of such lands, shut off the cause of malaria, make them fit for habitation and use, is a purpose sufficiently public to justify the exercise of this right.

*Public Health etc.—*

(2). "Public,"as used in connection with the word health, convenience or welfare, means the effect upon the people of the neighborhood—of the vicinity—of the proposed ditch, in contrast to the private rights or benefits of the individual. It is that which relates to the many in contradistinction to the one or comparatively few.

(3). If you are satisfied considering all these matters in the light of a fair preponderance of the evidence and your view of the premises and the law as above given you by the court, that the construction of the ditch as proposed will lead to a more healthful community, and a more prosperous neighborhood, and will result in the reclamation or bettering of a considerable quantity of low, wet or swamp lands, or drain stagnant ponds, thereby improving the public highways of the vicinity and health of the neighborhood and increasing the productive power and enhancing the value of the lands of the surrounding country of the proposed ditch, you would be justified in finding that the proposed ditch will be conductive to the public health, convenience or welfare, and should answer the first question in the affirmative.

*Practicable route—*

(4). If however the proposed ditch has sufficient fall, a proper course and direction, a sufficient outlet, to drain the lands proposed, and can be constructed without serious difficulty and without unusual and extraordinary expense, and when constructed will perform the offices of a ditch, your answer to the second question should be in the affirmative.

(5). It means that the proposed route is not an unreasonable one when considered in reference to the object sought to be accomplished and in connection with all the surrounding circumstances.

Instructions of the court to the jury on going out to view the premises.

ROCKEL, J.

Gentlemen of the Jury:

The instructions that the court will give

you now are not the final instructions in the case: The court will instruct you again. That will come after you have heard the evidence and had a view of the premises.

By the statute you are required to consider four questions in this case, because these questions have been raised by the appeal of the plaintiff.

The first question that you will be required to answer is whether said ditch will be conducive to the public health, convenience or welfare. It is required by the laws of our state that before any public improvement can be made and lands appropriated, the lands of a person taken—that there must be a finding that it is for the public health, convenience or welfare. Public health, convenience or welfare, as used in the statute and generally applied where lands are taken for a public purpose, means that it is for the benefit of the community, for the benefit of the neighborhood, to improve the country. It is for the many instead of a single person.

An improvement may be conducive to the public health, convenience or welfare if only upon one man's lands; but if the only purpose the ditch accomplishes if created would be to enable a person to raise more grain or to drain one person's lands, it would not cause it be conducive to the public health, convenience or welfare, but a ditch that would drain a country or farm, and thereby lessen the liability to malaria; but where swamps exist, or where public highways might be kept in better repair, or generally benefit the community—that would be something that would be conducive to the public health, convenience or welfare.

And the second matter to be determined is whether the route laid out and determined in this case is one that is practicable; that is, if the ditch be constructed upon this line, will it perform the functions of a ditch; that it will do what a ditch of that kind usually and ordinarily does do; that is that it will perform the offices and purposes of a ditch.

If you should find that the ditch when constructed would not perform the duties of such a ditch, and would not drain the land, would not have an outlet and such matters, you might then find that it would not be a practicable route.

And the third question is the compensation for each of these parties for the land taken by the ditch. This is a public improvement, and under our constitution, before land can be taken for a public improvement, the owner is entitled to receive just compensation for the amount of land taken by the improvement. You will determine that matter. And the fourth will be the damages due to the appellants; that is, for injury to the appellant's land on either side of the ditch because of some injury: these are matters for your consideration.

I have already said that you will receive further instructions from the court after you have viewed the ditch and heard the

evidence. Your duties in this case are larger than that of the ordinary jury. You may apply the evidence which you may acquire from the view, in determining the verdict; therefor you will observe in going over this route anything that will aid and assist you in determining these four questions. You notice the lay of the lands, its practicability to be drained, the outlet, and all these questions. The sheriff and surveyor will accompany you. Their duty will be to aid and assist you in ascertaining these facts.

You will be at liberty to ask them any questions pertaining to any of these matters, any such thing as you may desire to know. The plat will be with you, they will explain the width of the ditch, its depth, and any such questions as you may desire. You are to ask them no opinion about these questions, and they are to express none. Of course, you may ask the surveyor what the fall is—what the ditch will do so far as the plat will show, and such matters as that, but they are to express no opinion: they have no right to express any, and you are to ask none of them—only for the facts, such things as you may think you may need in rendering a true verdict on these questions. And let me say to you to have no conversation with any landowner that may come there. You are simply to do impartial justice between the parties. You will also have no conversation during the trial of this cause with anyone concerning the matters in issue.

(And thereupon Mr. Summers of counsel for appellants stated that he desired to note an exception to that part of the instructions as to what the jury might ask the engineer.)

And thereupon the court further instructed the jury as follows: I want you to be clear about this. You will ask the engineer any question that you may think proper to aid and assist you in determining these four questions. The engineer is to exercise great care and caution, and is not to express any opinion of his own, and you are to exercise great care and caution in not asking any opinion of him in reference to these four questions.

(Mr. Summers noted an exception to the instructions last delivered. Mr. Mower notes an exception to that part of the instructions that the sheriff and surveyor are to aid and assist the jury in determining the questions and also to the entire instruction.)

I want to say to you that the sheriff and surveyor are not to aid you in forming any opinion: they are merely impassive agents. Any opinion that they may have is not your opinion, but questions that you desire to ask them to aid you in determining these four questions you are at liberty to ask them.

———

(After View.)

Gentlemen of the Jury:
As was stated to you before viewing the proposed ditch improvement, the court will

again instruct you as to the law applicable to the case before you. Some things were then said which will no doubt be a repetition to you, now. The law places upon you the duty of considering four questions.

The first is, Whether such ditch will be conducive to the public health, convenience or welfare. The lands of an individual can be taken against his will only when it is necessary to subserve a public purpose or for a public use.

Our constitution provides, "That property shall ever be held inviolate but subservient to the public welfare". Wet lands not only retard cultivation, but are the certain sources of malaria, the prolific parent of disease.

To effect the drainage of such lands, shut off the cause of malaria, make them fit for habitation and use is a purpose sufficiently public to justify the exercise of this right.

You are required to find whether this ditch as located and established will be conducive to the public health, convenience or welfare; that is, whether it will promote or aid in bringing about the health, convenience or welfare of that part of the public affected by want of drainage, or by the improvement to be made, and is not limited or confined to private or personal interests, or to the interests or benefits of a few people of the neighborhood.

In order that this improvement shall be conducive to the public health, convenience or welfare, you need not find that it is absolutely necessary for the public health, convenience or welfare, but if it is conducive, that is, if it tends to or will contribute in any reasonable degree, to the public health, convenience or welfare, that is sufficient.

Even if you find that there are parts of the ditch which, if taken by themselves, would not be conducive to the public health, convenience or welfare, yet when considered as an entirety, as one completed improvement, as a whole, from source to outlet and its branches, which must be considered upon this question, it will as a whole be conducive to the public health, convenience or welfare, it will be your duty to answer the first question in the affirmative.

In order to find that this ditch will be conducive to the public health, convenience or welfare, it is no sufficient that you are satisfied that this ditch will drain the lands adjacent to it or enable the owners of adjacent lands to raise larger and better crops, but in order to so find, you must first believe from the evidence and view of the premises, that the public health, convenience or welfare is affected, or in some way suffers from the want of such a ditch.

You may be satisfied that the ditch will be a great convenience to, and will greatly benefit the lands along its route, and that it is necessary for its drainage, and yet you will not be authorized to find that the ditch will be conducive to the public health, convenience or welfare, unless you believe that the public health, convenience or welfare,

is in some way affected by the want of such a ditch. The fact that the ditch might enable the owners of the adjacent lands to raise larger crops is a fact going to show that they would be privately benefited; but it requires more than this to authorize you to find a verdict that the ditch will be conducive to the public health, convenience or welfare. If you find that the petitioners and adjacent land owners are the only persons in any way interested in the location of the ditch, and that it will not also be conducive to the public health, convenience or welfare, then and in that case, you should return your verdict against the proposed ditch.

If you find that by means of the proposed improvement, large quantities of water, which in times of freshets overflow the turnpikes and bridges in that neighborhood, rendering the same inconvenient for travel, will be carried away more rapidly, and with less injury to the roads or bridges, his will be conducive to the public convenience of the neighborhood so affected.

The fact that there have been old ditches or natural water course on or near the line of the proposed improvement, and that same could be so deepened and widened by cleaning, so as to accomplish the necessary drainage as well, and at less expense, or that the land could be drained in another direction, does not prevent the establishment of the new ditch, as that is but another mode of accomplishing the same thing.

If you do not believe from the evidence and your view of the premises, that the ditch is necessary, that is, that a ditch is needed, to drain the immediate surrounding country, then you should find that the ditch will not be conducive to the public health, convenience or welfare.

The object of the law is to provide a means of drainage whenever the public health, convenience or welfare requires it. It is not essential that the public at large shall be benefited, but only that part of the public affected by want of proper drainage, or by the improvement to be made. The injury from want of drainage and the benefits from the ditch are necessarily local in their nature. Public welfare, health and convenience in this connection are terms used in contradiction from a mere private benefit.

"Public," as used in connection with the word health, convenience or welfare, means the effect upon the people of the neighborhood,—of the vicinity, of the proposed ditch, in contrast to the private rights or benefits of the individual; it is that which related to the many in contradiction to the one or comparative few.

In determining this question, you are to consider, as shown to you by the testimony and your view of the premises, the general condition of the lands through which the proposed ditch extends as well as those in the immediate vicinity—the drainage now existing, and that to be afforded by the proposed improvement—the capability of the

land to be drained,—the condition of the public highways and the health of the people in general—the soil, its capabilities, and the crops raised thereon, as well as all other facts observed by you or given in evidence throwing any light upon the subject.

If you find after considering all these matters, in the light of the evidence and your view of the premises and the law as above given you by the court, that the construction of the ditch as proposed will lead to a more healthful community, and a more prosperous neighborhood, and will result in the reclamation or bettering of a considerable quantity of low, wet or swamp lands, or drain stagnant ponds, thereby improving the public highways of the vicinity, and health of the neighborhood, and increasing the productive power and enhancing the value of the land of the surrounding country of the proposed ditch, you would be justified in finding that the proposed ditch will be conductive to the public health, conven·ience or welfare, and should the first question in the affirmative, the second question you are required to answer is whether the proposed ditch is practicable.

The word "practicable" means that which may be done, practiced, or accomplished that which is performable, feasible, possible—that which is capable of being performed.

As used here, it means, not that it is the best route that might have been selected, but that the route proposed is such as one that if the ditch is dug it will perform the functions of a ditch; that it will drain the lands; that it has proper and suitable fall, and that a sufficient outlet is provided, and that it can be construed without serious difficulty. It means that the proposed route is not an unreasonable one when considered in reference to the object sought to be accomplished in connection with the surrounding circumstances.

If the route of this ditch is such an one that if the ditch be made as proposed, it will not perform the offices of a ditch— not have a sufficient fall, a proper course and direction or suitable outlet, to drain the lands proposed, cannot be made without great and serious difficulty, you should find that the route is not practicable. Likewise if a part only of the route of said ditch would be practicable and another part not practicable, so that the ditch will fail to perform the functions of a ditch and drain the country intended to be drained, the route would not be a practicable one.

The law prescribes that no improvement shall be located unless a sufficient outlet is provided. If therefore you believe from the evidence and your view of the premises, that the outlet provided for this ditch, is not sufficient, you should find the route is not practicable.

Likewise if you believe from the evidence and your view of the premises that the ditch will not reasonably accomplish the object for which it was established, you should find that the route is not practicable.

If however the proposed ditch has sufficient fall, a proper course and direction, a sufficient outlet, to drain the lands proposed, and can be constructed without serious difficulty, and when constructed will perform the offices of a ditch, your answer to the second question should be in the affirmative.

Should the first two questions receive an affirmative answer at your hands from two thirds of your number, the next and third question for your consideration, is the compensation due each appellant for the lands appropriated by the proposed ditch improvement, irrespective of any benefit that may result to such appellant land owners by reason of the construction of the proposed ditch.

The width of the land appropriated and for which compensation should be allowed, is that taken by the proposed ditch from the top of each side thereof.

For these amounts of land taken you are to allow to each respective appellant, full compensation therefor. It is no matter if in your opinion the remaining portion of the appellant land owner's property be enhanced in value by reason of the construction of said ditch, in an equal or greater sum than the value of the land appropriated; The appellant landowner is notwithstanding entitled to receive a verdict at your hands of the full fair market value, of the lands so taken and appropriated.

This market value is to be fixed at the time the property is appropriated, and in this case, that is the present time. The market value is the selling value.

It is the price which an article will bring when offered for sale in the market. It is the highest price which those having the ability, occasion and desire to buy, are willing to pay. The owner in parting with his property, is entitled to receive as compensation just such an amount as he could obtain if he were to go on the market and offer the property for sale.

I do not mean the price he would realize at forced sale upon short notice, but the price he could obtain after a reasonable time and notice, such as would ordinarily be taken by an owner to make a sale. It is not a fictitious price that should be allowed each appellant but the fair, just market value.

The fourth question you are to answer is the damages due each appellant for property affected by the improvement; that is, if the consturction of the proposed ditch causes any damages or injury to the adjoining lands of these appellants, you should allow each one an amount of money sufficient to cover such injury.

In deciding this question it will be proper for you to consider, whether or not the proposed ditch will cause an additional overflow of water over the adjoining lands, and if so, whether it is injurious or not; whether fields are divided into new and irregular parcels; whether the adjoining lands are injured by earth thrown out in

making the excavation for the ditch; whether crops will be destroyed or pastures injured in constructing said ditch; whether new or additional bridges ‹r culberts will be required. In short, whatever of actual injury, not remote, purely speculative, is lands of the caused to any of the adjoining appellants by reason of the proposed ditch should be by you considered, and the fair amount thereof allowed each appellant as his damage in this case. If however in your opinion there is no appreciable injury caused to such lands by any of the above causes, or in such other manner as the construction of such a ditch will cause to the adjoining landowners, and as is usually caused by the construction of such a ditch in a proper and reasonable manner. nothing should be allowed in the way of damages. Yet the full compensation in response to the third question should be allowed.

What is required by law, and that which is your duty to allow each appellant in reply to the third and fourth questions submitted to you in this appeal, is that the amount or sum of money which you allow each appellant as compensation for land taken and damages affecting this property, will be such a sum, as will render to him full compensation for the land taken and the injury caused by reason of the said ditch improvement.

It was proper that witnesses were permitted to testify as to the various matters which would result injuriously or beneficially to these appellants and to the public from the construction of the ditch as proposed. You are the sole judges of what weight is to be given to the testimony of the various persons who have testified in this cause. When the same is in conflict, it is your duty to reconcile it so far as possible. In weighing the testimony of the witnesses you are to consider the bearing of the witnesses on the stand, their evidence, bias or prejudice one way or the other, and you are not to take the average testimony of the witnesses in making up your verdict, this is not the true rule to ascertain the matters for your determination. But you are to weigh the evidence of each witness carefully and decide from his credibility and from your view of the premises what the verdict will be. Neither should you from any means of chance determine the amount of your verdict, but let it be a calm and deliberate conclusion, to arrive at which you have exercised thought and reason, and have given just weight and fair consideration to all the evidence before you.

You were sought to view the lands sought to be appropriated in tihs case and the location of the proposed ditch. This was for the purpose of enabling you better to determine the questions before you, and to apply your own judgment in regard to them as well as to better understand the evidence.

In arriving at your conclusions however you should take counsel of your own experience and knowledge of like subjects, and should not only consider what the witnesses

have testified to, but also you have seen in view, and if witnesses have testified to matter of opinion which you in the exercise of your own good judgment and sense, do not believe, you may disregard the same. If you find that the proposed ditch is conducive to the public health, convenience or welfare, and the route thereof is practicable, the fact that a large number of the adjoining landowners are opposed to such ditch, should have no bearing or weight with you in determining the quesitons before you.

Likewise you have nothing whatever to do with the findings made by the commissioners in this case.

The apportionment of the expense and expenses upon the landowners is not before you. You are to determine all the questions as if the case was originally brought before you, and determine all questions from the papers in the case, the testimony offered, and your view of the premises. Upon the first two questions presented, an affirmative vote of eight will be required to render a verdict in favor of the proposed ditch. Upon all these questions the entire jury must agree before a verdict can be rendered.

A. N. Summers, J. K. Mower, A. H. Gillett, P. S. Olinger, for Plaintiffs.

Oscar T. Martin, for Defendants.